# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WHITNEY NATIONAL BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 11-0179-WS-B |
| ) | |
| LAKEWOOD INVESTORS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter comes before the Court on plaintiff's Corrected Motion to Remand, or in the Alternative, Partially Remand (doc. 9). The Motion has been briefed and is now ripe for disposition.

**I.  Relevant Procedural Background.**

To say that this recently-removed action bears a tortured procedural history would be an understatement. Plaintiff, Whitney National Bank, commenced this action back in December 2007 to recover on a defaulted loan to defendant Lakewood Investors, LLC ("Lakewood"), as well as on loan guaranties executed by defendants Southeast Real Estate Investment Corp. ("SERIC"), Southeast Properties, I, LLC ("SEPI"), and Christopher B. White ("Mr. White"). (Doc. 15-1, at 27-40.) This action, which involved purely state-law claims, was brought in the Circuit Court of Mobile County, Alabama. In August 2008, the state court entered judgment in favor of Whitney and against defendants, jointly and severally, in the amount of $1,264,241.94. (Doc. 15-1, at 97.) The state court subsequently issued various charging orders and writs of garnishment to facilitate Whitney's efforts to collect on the August 2008 judgment.

That was not the end of the matter, although it should have been. In January 2010, the state court granted Whitney's request for leave to supplement its complaint with additional claims against SERIC and Mr. White, as well as claims against new defendants WBS, LC ("WBS"), White Family, LLC ("White Family"), and Finley White ("Ms. White"). This supplementation consisted of Whitney's allegations that SERIC, Mr. White, WBS, White

Family, and Ms. White had conspired to fraudulently transfer assets, and had actually transferred assets, to frustrate Whitney's efforts to collect on its judgment and to evade the state court's charging orders and writs of garnishment. (Doc. 15-1, at 102-05.)[1] In March 2010, WBS temporarily derailed the state court proceedings by filing a Suggestion of Bankruptcy, revealing that it had filed a Chapter 11 petition in the U.S. Bankruptcy Court for the Eastern District of Virginia. (Doc. 15-1, at 192.) The automatic stay prescribed by 11 U.S.C. § 362 brought the Alabama action to an abrupt halt, forcing Whitney to petition the Bankruptcy Court for relief.

In July 2010, the Bankruptcy Court granted Whitney relief from the automatic stay so that it could pursue its claims against WBS in state court. (Doc. 15-1, at 202.) The way thus paved for Whitney's claims against WBS to move forward, Mobile County Circuit Judge Lockett entered an order in September 2010 granting Whitney's motion for summary judgment and entering judgment in favor of Whitney and against WBS in the amount of $774,171.06, representing "the portion of property management fees, leasing commissions and/or other amounts properly belonging and payable to judgment defendant [SERIC], but which this Court finds were wrongfully and unlawfully transferred to WBS during the period of April 1, 2009 through December 11, 2009." (Doc. 15-1, at 214-15.) WBS's ensuing motion for reconsideration was denied in November 2010. (*Id.* at 220-21.)

Once again, that was not the end of the matter, although it should have been. History repeated itself. In March 2011, Whitney again petitioned the state court for leave to supplement its complaint by asserting new claims of fraudulent transfer of assets by the Whites (and various artificial entities they control) to evade enforcement of the judgment against WBS. Specifically, Whitney maintained that SERIC, Mr. and Ms. White, White Family, and new defendant Live

---

[1] Most notably, Whitney maintained that in the spring of 2009, SERIC had transferred certain property management, maintenance and leasing duties to WBS (purportedly an alter ego of SERIC whose sole member was SERIC). Lucrative fees, commissions and distributions were associated with those duties. Such funds would have been payable to SERIC, and hence subject to writs of garnishment issued after Whitney obtained its judgment in the summer of 2008; however, via SERIC's post-judgment transfer of those duties to its sister company, WBS, for no consideration whatsoever, those funds were instead paid to WBS, which was not subject to charging orders, writs of garnishment, and so forth. Thereafter, according to Whitney, WBS simply siphoned off those profits to Ms. White and White Family, to the tune of hundreds of thousands of dollars that rightfully should have been recoverable by Whitney in satisfaction of its judgment against SERIC. (Doc. 15-1, at 143-46.)

Oak Asset Management, LLC ("Live Oak") had implemented a scheme to circumvent the September 2010 judgment against WBS by shifting WBS's property management and leasing duties to a new entity – Live Oak (which, like WBS, is purportedly controlled by and benefits the Whites) – in October 2010. According to Whitney, no consideration was paid for this transfer, and the resulting fees and commissions were funneled away from WBS (a judgment defendant), through Live Oak, and to the Whites and White Family "in order to keep such profits out of the reach of Whitney's lawful judgment collection efforts." (Doc. 15-1, at 227.) In other words, Whitney alleged that the Whites were up to their old tricks of circumventing judgments and collection efforts through improper and fraudulent means. Just as defendants had stymied Whitney's efforts to collect on the SERIC judgment by diverting the stream of SERIC payments through WBS instead, so too have they (according to Whitney) frustrated efforts to collect on the WBS judgment by diverting the stream of WBS payments through Live Oak instead. On that basis, Whitney requested leave to pursue claims against Live Oak and several existing defendants for fraudulent transfer, civil conspiracy, accounting, unjust enrichment, money had and received, constructive trust, appointment of receiver, and injunction. (Doc. 15-1, at 230-41.)[2] After Judge Lockett granted Whitney's motion to supplement the complaint, Live Oak was served with process on March 18, 2011. (Doc. 15-1, at 229, 243.)

Within 30 days after service of process, Live Oak (which is represented by the same attorneys who represent White Family, Ms. White and WBS in this action) filed a Notice of Removal (doc. 1), removing this action to this District Court on the stated grounds of diversity of citizenship and bankruptcy removal. Whitney now seeks remand of the action to state court.[3]

---

[2]  The relief that Whitney seeks from Live Oak in these proceedings includes, *inter alia*, court orders that "[s]et[] aside and avoid[] any transfer of monies, property or assets from WBS to Live Oak Asset and any transfer of monies, property or assets from Live Oak Asset to or for the benefit of Finley White or White Family," and that "[a]ttach[] any monies, property, or assets transferred from WBS to Live Oak Asset … and any monies, assets or property transferred from Live Oak Asset to or for the benefit of Finley White or White Family." (Doc. 15-1, at 239.)

[3]  A number of Whitney's stated grounds for remand are procedural, rather than jurisdictional, and are therefore subject to the 30-day limitation prescribed in § 1447(c). *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."). Live Oak filed its Notice of Removal (doc. 1) on April 12, 2011, and Whitney filed its Motion to Remand (doc. 2) on May 11, 2011, some 29 days later; therefore, all
(Continued)

**II.     Analysis.**

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must demonstrate the existence of federal jurisdiction. *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008) ("A removing defendant bears the burden of proving proper federal jurisdiction.") (citation omitted); *Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. *See Adventure Outdoors*, 552 F.3d at 1294 ("Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court."); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction).

   *A.     Diversity Jurisdiction under 28 U.S.C. § 1332.*

Following removal, Whitney timely and correctly asserted that Live Oak's invocation of diversity jurisdiction under 28 U.S.C. § 1332 is fatally flawed for at least two reasons. First, the "forum defendant" rule provides that a civil action can only be removed to federal court on grounds other than federal question jurisdiction "if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).[4] Live Oak failed to make any showing that no defendants in this case are citizens of Alabama, much less to rebut Whitney's assertions that multiple defendants are or were Alabama

---

procedural objections to removal set forth in that Motion to Remand are timely raised. This is so even though Whitney filed a Corrected Motion to Remand after the 30-day period expired, inasmuch as the "corrections" are confined solely to non-substantive grammatical and typographical issues, rather than presentation of new or different grounds for remand not set forth in the original Motion. (*See* doc. 8.)

   [4]     *See also Daviero v. Hartford Ins. Co. of Southeast*, 2011 WL 1304640, *1 (M.D. Fla. Apr. 6, 2011) (remanding case for violation of forum defendant rule where defendant was a Florida corporation on the date of removal); *Mannsfeld v. Evonik Degussa Corp.*, 2011 WL 53098, *10 n.18 (S.D. Ala. Jan. 5, 2011) (recognizing that "statutory removal procedures … do not allow for removal on diversity grounds if any defendant is a citizen of the forum state").

citizens at the time of removal.[5] (*See* doc. 9, at 8.) Inasmuch as Live Oak has not shown why removal on diversity grounds comports with the forum defendant rule set forth in § 1441(b), after Whitney timely objected on that basis, it has not met its burden. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("A party removing a case to federal court based on diversity of citizenship bears the burden of establishing the citizenship of the parties."). This omission, by itself, defeats Live Oak's removal of this action on diversity grounds.[6]

Second, Whitney accurately observes that Live Oak's removal of this action on a diversity theory fails as a matter of law because "a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action." 28 U.S.C. § 1446(b).[7] "The one-year clock starts to run with the commencement of the action, not with service of a pleading or summons on the particular defendant." *First Merchants*

---

[5] The law is clear that "[t]he existence of federal jurisdiction is tested at the time of removal." *Adventure Outdoors*, 552 F.3d at 1294-95; *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1351 n.9 (11th Cir. 2009) ("removal jurisdiction is determined at the time of removal"). Accordingly, it is the citizenship of defendants on that date, rather than at some other time, that matters for purposes of this inquiry.

[6] Whitney has not suggested that this § 1441(b) defect is likewise fatal to removal on grounds of bankruptcy jurisdiction pursuant to 28 U.S.C. § 1452. The forum defendant rule is properly viewed as "a statutory impediment to the exercise of jurisdiction," rather than a limitation on subject-matter jurisdiction. *See, e.g., Hawkins v. Cottrell, Inc.*, --- F. Supp.2d ----, 2011 WL 1898867, *1 n.3 (N.D. Ga. May 19, 2011). Accordingly, the Court considers the forum defendant rule only to the extent that plaintiff has invoked it (*i.e.*, with respect to the diversity ground for removal jurisdiction, and not the bankruptcy ground for removal jurisdiction).

[7] The purpose of this one-year deadline is to "prevent[] the removal of cases where substantial progress has been made in state court." *Davenport v. Hamilton, Brown & Babst, LLC*, 624 F. Supp.2d 542, 544-45 (M.D. La. 2008); *see also In re Mugica*, 362 B.R. 782, 790 (Bankr. S.D. Tex. 2007) (explaining that "[t]he policy behind § 1446(b) is that … [r]emoval late in the proceedings may result in substantial delay and disruption of a case") (citations and internal quotation marks omitted); *Sasser*, 126 F. Supp.2d at 1336 (in imposing § 1446(b)'s one-year limit, "Congress intended that administrative expediency allowing a case to proceed to trial in state court should outweigh the necessity of access to diversity jurisdiction") (citation omitted). This is obviously a case where "substantial progress" has been made in state court, and where considerable delay and disruption would ensue if removal were allowed now. In short, it is exactly the kind of case for which the § 1446(b) temporal limit was created.

*Trust Co. v. Wal-Mart Stores East, LP*, 630 F. Supp.2d 964, 970 (S.D. Ind. 2008); *see also Ardoin v. Stine Lumber Co.*, 298 F. Supp.2d 422, 425 (W.D. La. 2003) (determining that "the addition of new plaintiffs did not commence the action" for purposes of the one-year time limit prescribed by § 1446(b)); *Sasser v. Ford Motor Co.*, 126 F. Supp.2d 1333, 1335-36 (M.D. Ala. 2001) (determining that one-year period for removal on diversity grounds runs from the filing of the original complaint, not from the joinder of the removing party as a defendant). Plainly, this action commenced in state court well over a year prior to removal, inasmuch as Whitney filed its original complaint back in December 2007, and the Notice of Removal was not filed until April 12, 2011. Whitney has timely objected to this procedural defect. And Live Oak has proffered no explanation or excuse for why the one-year limit does not bar its removal on § 1332 grounds. Removal was thus untimely under § 1446(b).

In sum, Live Oak's removal of this action to this District Court on diversity grounds was procedurally improper because it comported neither with the forum defendant rule set forth in § 1441(b) nor the one-year deadline set forth in § 1446(b). Whitney having timely objected to both defects, removal cannot stand on diversity grounds. Thus, absent some other viable basis for removal, remand of this action to the Circuit Court of Mobile County is appropriate.

### B. *Bankruptcy Removal under 28 U.S.C. § 1452.*

Live Oak's other theory for removal was pursuant to 28 U.S.C. § 1452, which provides in pertinent part that "[a] party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a).[8] Section 1334, in turn, confers "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.

---

[8] There is some debate in the parties' briefs as to whether Live Oak violated the unanimity rule by removing this action without the consent or joinder of all other defendants. Whitney has not specifically pursued this ground as a basis for remand to the extent this action was removed under § 1452. Although definitive resolution of this issue is unnecessary because movant has not squarely raised it, the Court notes that "[i]t now appears that the great weight of authority holds that unanimity is not required in a § 1452 removal." *In re Terry Mfg. Co.*, 324 B.R. 147, 152 (Bankr. M.D. Ala. 2005) (collecting cases); *see also In re Mortgages Ltd.*, 427 B.R. 780, 788 (D. Ariz. 2010) ("numerous other jurisdictions have agreed with the Bankruptcy Court and held that the rule of unanimity does not apply to removal pursuant to § 1452(a)").

§ 1334(b). Live Oak reasons that Whitney's claims "arise under" WBS's ongoing bankruptcy proceedings in the U.S. Bankruptcy Court for the Eastern District of Virginia because Whitney's claims (*i.e.*, that Live Oak and others conspired to effect a fraudulent transfer of WBS assets) are the property of WBS's bankruptcy estate and can only be asserted by the bankruptcy trustee. Live Oak states that its purpose in removing this action to this District Court was, ultimately, to have it transferred to the Bankruptcy Court in Virginia, where claims that WBS fraudulently transferred assets to Live Oak could be litigated once and for all.[9]

### 1. Mandatory Abstention under 28 U.S.C. § 1334(c)(2).

The first problem with Live Oak's reliance on bankruptcy jurisdiction for removal of this case is the mandatory abstention rule, which reads as follows:

> "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

28 U.S.C. § 1334(c)(2); *see also Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir. 2000) (explaining that § 1334(c)(2) mandatory abstention "applies to state law claims that have been removed to federal court under § 1452(a)"). Mandatory abstention applies if a timely motion is filed and if the following additional requirements are met: "(1) The claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding …; (3) an action has been commenced in state court; and (4) the action could be timely adjudicated in state court." *In re SOL, LLC*, 419 B.R. 498, 504 (Bankr. S.D. Fla. 2009) (citation omitted).

There is no dispute that Whitney has timely moved for § 1334(c)(2) abstention, that this proceeding is based upon state-law claims or causes of action, or that this action was commenced in and can be timely adjudicated in a state forum. Moreover, given the absence of any federal question, as well as the Court's finding that diversity jurisdiction is lacking, it is clear that this

---

[9] That said, Live Oak has separately moved in this Court for dismissal of Whitney's claims on the grounds that such claims belong exclusively to WBS's bankruptcy trustee. According to that motion, "Whitney does not own the causes of action it is attempting to assert – the Virginia Bankruptcy Trustee does." (Doc. 14, at 4.) So Live Oak plainly seeks to secure dismissal of Whitney's claims for lack of standing, either in this Court or in Bankruptcy Court.

action could not have commenced in federal court absent jurisdiction under § 1334. As such, § 1334(c)(2) may require abstention in this case, depending on whether this proceeding "arises under" Title 11 or "arises in" a case under Title 11 (as Live Oak maintains), or whether this proceeding is merely "related to" a case under Title 11 (as Whitney argues).

The Eleventh Circuit has explained that "core proceedings" are those "arising under title 11, or arising in a case under title 11." *In re Toledo*, 170 F.3d 1340, 1349 (11th Cir. 1999). "A proceeding is not core [if] the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy." *In re Electric Machinery Enterprises, Inc.*, 479 F.3d 791, 797 (11th Cir. 2007) (citation and internal quotation marks omitted). A proceeding "arises under title 11" when it "invokes a cause of action, or substantive right, created by a specific section of the Bankruptcy Code." *Toledo*, 170 F.3d at 1349; *see also Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009) ("'Arising under' proceedings are matters invoking a substantive right created by the Bankruptcy Code.") (citation omitted). Likewise, a proceeding "arises in a case under title 11" when it "invoke[s] the peculiar powers of the bankruptcy court," as opposed to the mere act of filing a claim invoking a state law right which "could be enforced in a state court proceeding absent the bankruptcy." *Toledo*, 170 F.3d at 1349-50 (citations omitted); *see also Lawrence*, 573 F.3d at 1270 (describing "arising in" category as involving "administrative-type matters") (citation omitted). And finally, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990) (citation omitted).

Live Oak's contention that Whitney's fraudulent-transfer claims constitute a core proceeding is unpersuasive. In particular, Live Oak has not explained how Whitney's claims invoke a cause of action or substantive right created by a specific section of the Bankruptcy Code. To the contrary, Whitney is pursuing purely state-law claims to recover in tort against a party (Live Oak) that it contends violated state statutory and common law by interfering with its right to collect a state-court judgment. Moreover, those claims could plainly be adjudicated, and Whitney's underlying rights could be enforced, in a state-court proceeding absent WBS's bankruptcy, and do not invoke the peculiar powers of the bankruptcy court.

Live Oak's only argument in favor of "core" status is that Whitney's claims against Live Oak belong to WBS's bankruptcy trustee, such that only that trustee may assert them. There is case law to support the proposition that the claims belong to the trustee, not to the creditor. *See, e.g., In re Clark*, 374 B.R. 874, 876 (Bankr. M.D. Ala. 2007) ("It is well established that once a petition in bankruptcy is filed, the trustee in bankruptcy has the exclusive right to bring suit to recover property fraudulently transferred by a debtor.") (citations omitted).[10] If those authorities carry the day, they may well warrant either dismissal of Whitney's claims for lack of standing, or stay of such claims pursuant to the automatic stay provisions of 11 U.S.C. § 362.[11] Furthermore, those authorities would support a determination that this is a core proceeding if, in fact, the fraudulent-transfer claims at issue had been brought by the bankruptcy trustee, rather than by Whitney, as a means of protecting and preserving the estate's assets.[12] But this line of argument

---

[10] That said, there also appears to be case law to the contrary. *See, e.g., Steffen v. Gray, Harris & Robinson, P.A.*, 283 F. Supp.2d 1272, 1284 n.24 (M.D. Fla. 2003) (determining that fraudulent transfer action is not property of the estate in bankruptcy); *In re Saunders*, 101 B.R. 303, 305 (Bankr. N.D. Fla. 1989) ("[t]he fraudulent transfer cause of action itself is not considered property of the estate").

[11] *See, e.g., In re MortgageAmerica Corp.*, 714 F.2d 1266, 1276 (5th Cir. 1983) ("Actions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance laws would interfere with this estate … and are therefore appropriately stayed under section 362(a)(3)."); *In re Zwirn*, 362 B.R. 536, 539 (Bankr. S.D. Fla. 2007) ("***all*** courts appear to agree that commencing a bankruptcy case stays any state court fraudulent conveyance actions by a creditor …, thereby ensuring that the estate's interests in the fraudulent transfer claim are properly protected to ensure that the estate and its creditors may receive the benefits"); *Bonar v. Ray*, 2011 WL 1100467, *6 (C.D. Ill. Mar. 22, 2011) (noting that if automatic stay did not reach such claims, "it may lead to the untenable result of having a bankruptcy trustee competing with creditors to assert fraudulent transfer claims").

[12] In that regard, Live Oak correctly asserts that where a bankruptcy trustee brings fraudulent transfer claims, such claims are core proceedings. Of course they would be, because the trustee's right to bring such claims is created by the Bankruptcy Code, such that those claims would necessarily arise under Title 11. But Whitney's claims, as postured, are <u>not</u> brought by a bankruptcy trustee, are not being asserted for the benefit of the bankruptcy estate, and do not invoke substantive rights created by the Bankruptcy Code. Simply put, Live Oak's "core proceeding" argument is predicated not on the claims that actually exist in this case (*i.e.*, a creditor's state-law claims for fraudulent transfer) but on the claims that it believes would be proper (*i.e.*, a bankruptcy trustee's claims under the Bankruptcy Code for fraudulent transfer). The Court will evaluate abstention not on the basis of hypothetical claims that are not presented, but on the actual form and substance of the existing claims.

does not establish how Whitney's claims – as opposed to some hypothetical claims brought by a party that is not before this Court – either invoke a substantive right created by federal bankruptcy law or could not exist outside of bankruptcy, as would be necessary for "core" status to attach. Live Oak has not explained how Whitney invoked a substantive bankruptcy right, particularly when its claims, if they exist at all, plainly exist outside of bankruptcy.[13] The WBS trustee is not a party to this case, has not pursued fraudulent-transfer claims against Live Oak in the bankruptcy proceedings, and has never asked this Court (or, apparently, any court) for a determination as to whether those claims belong to the estate. And certainly, Whitney is not asking in its Second Supplemental Complaint for a judicial determination of what is or is not the WBS bankruptcy estate's property.

What we are left with, instead, is a state-court proceeding that, by Live Oak's own reckoning, would simply have effects (or potential effects) on administration of WBS's bankruptcy estate and/or the liquidation of its assets. (*See* doc. 1, at 5.) That is the very essence of a non-core "related to" proceeding. *See, e.g., Lawrence*, 573 F.3d at 1270-71 ("related to" test is satisfied where outcome of action "could alter the debtor's rights, liabilities, options, or freedom of action … and … in any way impacts upon the handling and administration of the bankrupt estate") (citations omitted).[14] "[E]ven where federal jurisdiction attaches in actions 'related to' bankruptcy proceedings, Congress has explicitly provided for courts to find that those

---

[13] If Live Oak is correct, then Whitney's claims do not exist inside of bankruptcy any more than they exist outside of it. Thus, far from asserting that Whitney's claims are cognizable only in bankruptcy, so as to be "core" proceedings, Live Oak's position is that those claims, as asserted by Whitney, are not cognizable anywhere.

[14] *See also New England Wood Pellet, LLC v. New England Pellet, LLC*, 419 B.R. 133, 142 (D.N.H. 2009) ("[t]he usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy") (citations omitted); *In re AK Services, Inc.*, 159 B.R. 76, 84 (Bankr. D. Mass. 1993) ("A proceeding is 'related to' a bankruptcy case if its resolution will affect the property of the estate available for distribution to creditors … or if the outcome could conceivably have an effect on the administration of the bankruptcy estate.") (citations omitted).

matters are more properly adjudicated in state court." *Williams v. Shell Oil Co.*, 169 B.R. 684, 690 (S.D. Cal. 1994).[15]

On this showing, then, Live Oak has not established a legal or factual basis why § 1334(c)(2) would not apply here. Indeed, Whitney made a timely motion for mandatory abstention, in a non-core proceeding based on state-law claims, which action could not have been commenced in federal court absent bankruptcy jurisdiction, and which action can be timely adjudicated in the Mobile County Circuit Court. For all of these reasons, the Court finds that Whitney's Motion to Remand is due to be **granted** pursuant to 28 U.S.C. § 1334(c)(2), and that this entire action should be remanded to state court on that basis.

### 2. *Remand on Equitable Grounds under 28 U.S.C. § 1452(b).*

Even if mandatory abstention under § 1334(c)(2) did not necessitate returning this action to Mobile County Circuit Court, remand would remain appropriate under the bankruptcy removal statute. When removal is predicated on bankruptcy jurisdiction, "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action ***on any equitable ground***." 28 U.S.C. § 1452(b) (emphasis added); *see also Williams*, 169 B.R. at 692 ("[q]uite apart from its obligation to abstain under section 1334(c)(2), a federal court has discretionary power to abstain in the interest of justice, or in the interest of comity with State courts or respect for State law") (citation and internal quotation marks omitted). The equities strongly favor remand here.

Factors that courts have considered in exercising their discretion under § 1452(b) include, without limitation, the following: (i) the effect of abstention on efficient administration of the bankruptcy estate; (ii) whether state law issues predominate over bankruptcy issues; (iii) whether applicable law is difficult or unsettled; (iv) whether related proceedings exist in a non-bankruptcy court; (v) the presence or absence of bankruptcy jurisdiction other than that conferred by § 1334; (vi) the degree of relatedness of the case to the main bankruptcy action; (vii) the

---

[15] Even "related to" jurisdiction may be murky here. After all, the state court has already held that the assets paid to WBS actually belonged to SERIC, not WBS. A logical extension of that ruling is that what Whitney seeks to recover from Live Oak are not fraudulently transferred assets belonging to WBS, but fraudulently transferred assets belonging to SERIC, with WBS being merely a conduit or way station in the fraudulent transfer from SERIC to Live Oak. Viewed through that prism, Whitney's claims may not implicate WBS's bankruptcy estate at all.

substance rather than form of a purported "core" proceeding; (viii) the feasibility of severing state-law claims from core bankruptcy matters to allow entry of state-court judgments; (ix) the burden of the bankruptcy court's docket; (x) the likelihood of forum-shopping; (xi) whether a right to jury trial exists; (xii) the presence of non-debtor parties; (xiii) comity; and (xiv) the risk of prejudice to other parties. *See, e.g., In re Scanware, Inc.*, 411 B.R. 889, 897-98 (Bankr. S.D. Ga. 2009) (applying this 14-factor test); *In re Terry Mfg. Co.*, 324 B.R. 147, 154 (Bankr. M.D. Ala. 2005) (utilizing similar 12-factor test in permissive abstention context); *In re Coleman*, 200 B.R. 403, 406 (Bankr. S.D. Ala. 1996) (reciting factors such as duplication of judicial resources, economical use of judicial resources, risk of inconsistent results, and expertise of court where action originated).

Upon consideration of all relevant factors, the undersigned finds compelling equitable reasons for exercising § 1452(b) discretion to remand this entire action to state court. The most singularly striking procedural aspect of this case is that it was pending (and aggressively litigated) in Mobile County Circuit Court for three and a half years before removal to federal court. The state court invested untold resources in understanding, directing the progress of, and adjudicating myriad issues in this case during that time period. To accept federal jurisdiction over this matter now would be to encroach on the state court's authority, undermine its efforts, and implicate significant comity concerns. *See, e.g., Scanware*, 411 B.R. at 898 ("comity and respect for state jurisdiction are compelling considerations in this case"). Moreover, retention of federal jurisdiction over this matter would be staggeringly inefficient as this Court (or the Bankruptcy Court, in the event of a transfer) would be forced to educate itself about several years' worth of underlying proceedings with which Judge Lockett in state court is already intimately familiar.[16] Because of the necessary catch-up period involved, the result of exercising

---

[16] A concrete example will illustrate the magnitude of the problem. On June 2, 2011, the undersigned entered an Order (doc. 13) expressing concern that Live Oak, in removing this action from state court, failed to comply with the requirement of 28 U.S.C. § 1446(a) that copies of all process, pleadings and orders served on the removing defendants must be filed contemporaneously with the notice of removal. The omission was significant because, for instance, the Court could not even discern what claims had been brought against Live Oak or the other defendants, much less when their responsive pleadings were due. In response to the June 2 Order, Live Oak filed 243 pages of state-court pleadings, court filings, motion papers, etc., concerning these proceedings. (*See* doc. 15.) But that was not everything. Live Oak explained that it was not filing the entire state-court file because "several hundred, if not thousands of
(Continued)

§ 1452 jurisdiction over this matter would be duplication of judicial effort and (in all likelihood) delayed adjudication of this case in federal court.

Other factors likewise weigh strongly in favor of discretionary abstention / equitable remand. As pleaded, Whitney's claims against Live Oak sound exclusively in Alabama statutory and common law, not federal law.[17] State courts are unquestionably the preferred arbiters of state law. *See, e.g., Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law.") (citation omitted); *In re Republic Reader's Service, Inc.*, 81 B.R. 422, 427 (S.D. Tex. 1987) ("State courts afford the best forum for deciding issues whose resolution turns on interpretation of state law; consequently I interpret the abstention powers granted by Congress broadly."). Moreover, the state's interest here goes beyond the mere interpretation of its laws. Recall that the premise of Whitney's claims is that Live Oak (as well as other defendants) conspired to divert assets as a

---

garnishments, motions for charging orders, subpoenas, scheduling orders, extensions, briefs and associated process have been filed in the circuit court case." (Doc. 16, ¶ 5.) That's precisely the point. The state court has lived through, and presided over, every step in the case. Those proceedings have been so involved, so voluminous, and so extensive that Live Oak has asked for relief from § 1446's requirement that it file copies of all process, pleadings and orders from the underlying case. If it would be burdensome for Live Oak to file those materials in federal court, imagine the burden on this Court to review and absorb those documents in order to be fully informed about what has transpired in state court. The alternative – simply accepting one or another party's representations about what is or is not important in the state-court file – holds little allure either. Remanding this matter to the Mobile County Circuit Court would alleviate all of these concerns, inasmuch as the state court is fully apprised with the contents of that file already.

[17] To be sure, Live Oak invokes federal bankruptcy law as a defense to Whitney's claims, asserting that Whitney lacks standing because its claims lie in the exclusive purview of the trustee in the WBS bankruptcy proceeding in Virginia. But that does not change the fact that Whitney's claims are brought entirely under Alabama law. To the extent that Whitney's fraudulent-transfer claims against Live Oak are subject to the automatic stay in bankruptcy in light of the WBS bankruptcy proceedings, the state court has already demonstrated familiarity with, sensitivity to, and a commitment to abide by such principles. Indeed, Whitney's claims against WBS were stayed by the Mobile County Circuit Court until Whitney obtained relief from the automatic stay to pursue them. There is no reason to believe that the same procedure would not be followed as to Whitney's efforts to pursue fraudulent-transfer claims against Live Oak, or that the automatic-stay principles involved are so arcane or complex that an Alabama Circuit Court judge would be unable to apply them properly.

means of dodging Whitney's attempts to enforce an Alabama state-court judgment against WBS, as well as various charging orders and writs of garnishment issued by the Alabama court. The Alabama courts' strong interest in enforcing their own judgments and orders is another consideration that points emphatically in the direction of remand.

Also, it bears noting that this case is not simply a two-party dispute between Whitney and Live Oak. There are numerous other pending state-law claims in this action, brought by Whitney against other defendants who have neither invoked (or even consented to) federal jurisdiction nor suggested that the state court is an inappropriate or undesirable forum.[18] There are garnishment contests, charging orders, discovery proceedings, and motion practice, all of which were pending before, and in the process of being adjudicated by, the Mobile County Circuit Court at the time of removal. Many of these issues and filings (some of which concern efforts to satisfy the judgments already entered against SERIC, SEPI and Mr. White) are entirely divorced from, and have no discernable nexus to, the WBS bankruptcy proceedings. Yet they have been removed to this District Court in tandem with Whitney's claims against Live Oak. It would make little sense for those exclusively state-law matters, many of which involve ongoing efforts by Whitney to satisfy a state-court judgment and most of which have no bearing on the WBS bankruptcy proceedings, to be uprooted and forced to begin from scratch in federal court before a judge who lacks in-depth knowledge of the convoluted history of this case.[19] Finally, although the Court

---

[18] For example, Whitney has a variety of pending claims against Mr. White, Ms. White and White Family, all of whom are alleged to have received diverted funds that would otherwise be due and payable to Whitney on its judgments against SERIC, SEPI and Mr. White.

[19] The Court has also considered the alternative proposal of a partial remand of this action, pursuant to which Whitney's claims against Live Oak (*i.e.*, the ones that implicate § 1334 jurisdiction) could remain in federal court and the rest of the case could be shipped back to state court. Such an approach is unpalatable because all of these claims are links in the same chain of events. According to Whitney's narrative, as well as documents from the state court file, Whitney obtained a money judgment against certain defendants for defaulting on a note, only to have those defendants embark on a series of evasive maneuvers designed to conceal and redirect assets away from Whitney's grasp. The claims against Live Oak are part and parcel of a much larger tapestry of interwoven claims against various defendants. From a pragmatic, efficiency standpoint (as well as the standpoint of avoiding undue risk of inconsistent results), it would make little sense to carve this case into pieces, keeping one portion of it in federal court and remanding the remainder to state court, inasmuch as similar issues involving the same course of conduct are at issue in both.

will not indulge speculation about Live Oak's motives, the circumstances of the removal of this action are suspect.[20] Certainly, the possibility that removal may have been accomplished for purposes of delay or other improper reason is a factor that is appropriately considered in the § 1452(b) discretionary calculus.

In sum, Live Oak's removal of this action to federal court came at a time when the Mobile County Circuit Court was already deeply invested in this litigation. The case had been pending in state court for more than three years. The state court had entered money judgments against certain defendants, and had issued numerous garnishment writs, charging orders, and other documents to facilitate Whitney's ongoing efforts to enforce those judgments. Removal effectively snatched many of these unfinished, pending matters from the state court's grasp. Whitney's purely state-law claims against Live Oak are, in essence, that it has engaged in improper conduct to frustrate Whitney's attempts to collect on the state-court judgment. The state court has a strong interest in enforcing its judgments and applying Alabama law to Whitney's claims. The state court can perform these functions more efficiently and expeditiously than a federal court by leveraging its extraordinarily in-depth familiarity with the

---

[20] As the Court understands it, several defendants (including Mr. and Ms. White, as well as White Family) have continued receiving sizeable cash distributions from a variety of entities – first SERIC, then WBS, and now Live Oak – throughout these proceedings, even though Whitney has obtained and vigorously sought to enforce judgments against certain of those entities. There is a "follow-the-bouncing-ball" quality to the underlying facts, as alleged by Whitney, as it has struggled to cut off the flow of funds to the Whites and apply those funds to satisfy the judgments. By contrast, the Whites have an obvious interest in continuing to keep that ball bouncing, just beyond Whitney's reach, for as long as possible, so that the Whites can continue to receive those payments. By removing this action to federal court, Live Oak (which is represented by the same counsel as the Whites) ensured that those payment streams would continue unabated for a period of months while the procedural and jurisdictional confusion was sorted out in federal court, in effect leaving in limbo such matters as a writ of arrest for Mr. White (for failing to comply with discovery requests), a deposition notice for Ms. White, a host of garnishment contests and charging orders, and a motion for preliminary injunction against the Whites. Regardless of what their actual intentions were, the undeniable fact is that the Whites (and, by extension, Live Oak) stood to benefit from delaying these proceedings, which is precisely what was accomplished by Live Oak's notice of removal. Live Oak could have more efficiently asserted its position that Whitney's claims were related to the WBS bankruptcy proceedings by filing in state court either a motion to stay (under 11 U.S.C. § 362) or a motion to dismiss for want of standing. Instead, it chose to add an additional layer of procedural complexity and delay by removing the entire action to federal court, thereby enabling the stream of payments to continue flowing unabated to the Whites in the interim.

parties, the legal and factual issues, the dynamics of what has transpired in this proceeding to date, and so on. And the state court has demonstrated in this very case both sensitivity towards and deference / respect for bankruptcy rules and restrictions, including honoring the automatic stay where appropriate. There is no inkling that the state court will not continue in this manner if, indeed, Live Oak is correct that Whitney's claims against Live Oak implicate WBS bankruptcy considerations in such a way that stay or dismissal is warranted. The Court has no evidence or argument before it that Live Oak or any other party would be prejudiced in the slightest by the remand of this matter to state court; to the contrary, remand would serve all parties' interests by enabling a timely resolution of this dispute by a tribunal that is intimately familiar with both the extensive history of this case and the parties' relations and conduct.[21]

In light of the above discussion, and separate and independent from its conclusion that remand is warranted on mandatory abstention grounds, the Court exercises the discretion conferred by 28 U.S.C. § 1452(b) to remand this action on equitable grounds.

### III. Conclusion.

For all of the foregoing reasons, plaintiff's Corrected Motion to Remand (doc. 9) is **granted** pursuant to both the mandatory abstention principles articulated in 28 U.S.C. § 1334(c)(2) and the equitable remand principles set forth in 28 U.S.C. § 1452(b). This action is hereby **remanded** to the Mobile County Circuit Court for further proceedings.

DONE and ORDERED this 28th day of July, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[21] To flesh out the point, Live Oak's position is that Whitney's claims against it may properly be asserted only by the WBS bankruptcy trustee, such that Whitney lacks standing at this time. If Live Oak is correct, then the appropriate relief would be either (i) staying Whitney's claims against it until the WBS bankruptcy concludes, or (ii) dismissing those claims without prejudice. Such outcomes would be equally achievable in state court as they are in federal court, without the attendant delays, efficiency losses, disruption to other aspects of these proceedings, and infringement on state-court authority that would be wrought if this action remained in federal court.